MYLES SALT COMPANY, LIMITED, *v.* BOARD OF COMMISSIONERS OF THE IBERIA AND ST. MARY DRAINAGE DISTRICT.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 141. Argued December 16, 1915.—Decided January 10, 1916.

The legislature of a State may constitute drainage districts and define their boundaries, or may delegate such authority to local administrative bodies; and such action, unless palpably arbitrary and a plain abuse, does not violate the due process provision of the Fourteenth Amendment. *Houck* v. *Little River District, ante,* p. 254.

Action of the local administrative body in including land within a drainage district which is palpably arbitrary, such inclusion not being for the purpose of benefiting such land directly but for the purpose of obtaining revenue therefrom, amounts to deprivation of property without due process of law under the Fourteenth Amendment.

Although under the law of Louisiana the action of the police jury in determining, in the exercise of its discretion, what property shall be included in a drainage district can not be inquired into except upon a special averment of fraud, one not charging fraud or attacking the statute of the State, may attack the law as administered as depriving him of his property without due process of law by the inclusion within a drainage district of property in no wise benefited by the proposed system, and thus raise a Federal question, giving this court the right under § 237, Jud. Code, to review an adverse decision.

Power arbitrarily exerted, imposing a burden without a compensating advantage of any kind, amounts to confiscation and violates the due process provision of the Fourteenth Amendment.

THE facts, which involve the validity, under the due process provision of the Fourteenth Amendment of the action of a Police Jury in Louisiana establishing a drainage district and including property therein not benefited by the drainage system, are stated in the opinion.

*Mr. Edgar H. Farrar* for plaintiff in error.

*Mr. L. T. Dulany* for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

Suit to restrain the sale of plaintiff in error's land about to be made, it is alleged, by defendants in error to collect a tax of five mills for four years aggregating the sum of $2,000 and penalties. (We shall refer to the parties as plaintiff and defendants, respectively, that being their relation in the state courts.)

There is no dispute about the state laws. It is stated in plaintiff's brief that it is a matter of ordinary geographic knowledge that large portions of the flat lands in Louisiana adjacent to the Gulf Coast are subject to fluvial or tidal overflow and must be leveed and drained by systems of general and special public levees and drains. To this end

legislation has been enacted, beginning in 1888 and re-
ceiving constitutional sanction in 1898 (article 281). By
an act passed in 1900 (acts of 1900, p. 12) previous statutes
were consolidated and it was provided that when the
drainage of any locality was such that in the opinion of
the Police Juries of the respective parishes it should be-
come necessary to organize or create a drainage district
composed partly of land situated in adjoining parishes,
then such drainage district should be created by joint
action of the Police Juries of the respective parishes.

The districts were authorized to issue bonds for drainage
purposes and levy a five-mill tax on all property subject
to taxation situated in them. The statute was amended
in details and reënacted in 1902 and 1910 (acts of 1902,
p. 293; acts of 1910, p. 542).

Acting under these statutes the Police Juries of the ad-
joining parishes of Iberia and St. Mary organized the
drainage district with which the case at bar is concerned
and the organization of which is attacked.

The ground of the attack is that the district for the con-
struction and maintenance of which the tax was levied
wa of no benefit to plaintiff's land and was formed only
for the benefit of the other lands, was an unconstitutional
usurpation of authority and was and is an effort to take
plaintiff's property without due process of law in violation
of the Fourteenth Amendment to the Constitution of the
United States.

The case was heard upon the petition in the case and an
exception by defendants of no cause of action. The court
dissolved the injunction that had been theretofore granted
and dismissed the suit with an award of costs and at-
torneys' fees. Judgment was entered accordingly and
sustained by the Supreme Court of the State.

The trial court held that the gist of plaintiff's demand
was to the effect that no benefit was or would be derived
by its property by the general drainage system and the levy

and collection of the tax on its property. The court said
the question presented by the demand was no longer an
open one. The principle laid down by the courts, it was
declared, is that the creation and determination of drain-
age districts being a legitimate and lawful exercise of
discretionary powers, the courts are without power to
impugn or inquire into motives "where no fraud is
pleaded.". The Supreme Court affirmed the action of the
district court and the principle upon which it was based,
saying that that court accepted the view as correct "that
the decisions heretofore rendered settle the question for-.
ever that the local authorities as to drainage have the
absolute right to organize drainage districts and give
them shape and boundary lines as they choose." And it
was further said: "it is upon that theory that the case is
before us for decision; . . . Without an element of
fraud alleged, the court properly dismissed the suit. . . .
Here no fraud has been alleged, nor its equivalent." Prior
cases were cited.

Is this a correct view of the petition? The principle of
law involved in the answer to the question is well known.
There is no doubt that the legislature of a State may con-
stitute drainage districts and define their boundaries or
may delegate such authority to local administrative
bodies, as, in the present case, to the Police Juries of the
parishes of the State, and that their action cannot be
assailed under the Fourteenth Amendment unless it is
palpably arbitrary and a plain abuse. *Houck* v. *Little
River Drainage District*, decided November 29, 1915,
*ante*, p. 254. Does the district under review come within
the principle or its limitation? Was it formed in an ar-
bitrary manner and in plain abuse of power? The answer
depends upon the allegations of the petition which, being
excepted to for insufficiency in law, must be taken as
true.

We condense them narratively. as follows: Weeks Is-

land, the property which is the subject of the controversy, is one of several islands, being the highest uniform elevation above sea level in southwest Louisiana. It rises abruptly 175 feet or more, is surrounded on two sides by bayous, on the rear by a salt-water marsh and on the front by a bay (Vermillion Bay), with a small strip of salt-water marsh intervening.

Its topography is high and rolling, the drainage excessive, and washing and erosion are serious problems. The country around it outside of the sea marsh is thickly settled and presents the character of low lands as distinguished from high lands or uplands, reaching a maximum elevation of about 15 feet as against a maximum elevation of Weeks Island of 175 feet.

In lieu of needing drainage the problem the Island is confronted with "is to guard against washing and erosion, and that the drainage of all of the territory between it and Bayou Teche on all sides and to all extents leads to the marshes subject to tidal overflow between it and the mainland."

Some years ago a drainage district, known as the Iberia & St. Mary Drainage District, was organized at the instigation of interested individuals for the purpose of drainage into the bayous and marshes surrounding Weeks Island of certain lands lying between Bayou Teche and the marshes.

Solely with the view of deriving revenues from the assessment of Weeks Island and the salt deposit therein and only for the benefit of the other properties and not upon the theory that a general scheme of drainage would inure to the benefit of all of the property therein, even indirectly, and not through an exercise of sound and legal legislative discretion, the Island was included within the confines of the district. In pursuance of such scheme and plan an election was held for the imposition of an *ad valorem* tax of five mills for a period of forty years

upon which to predicate an issue of bonds. The election resulted in the imposition of the tax.

It was not intended nor has it ever been intended, nor was it possible nor is it possible, to give any of the benefits of the drainage scheme to Weeks Island or to the salt deposit therein, directly or indirectly, its inclusion in the district being solely and only for the purpose of deriving revenue therefrom for the special benefit of the other lands subject to be improved by drainage, without any benefit to plaintiff or its property whatever. The island is the highest assessed piece of property in the district and has never received one single cent of benefit from the drainage system constructed and maintained in such district, and never can or will in the future receive any benefit whatever from the system.

Plaintiff has uniformly for the reasons detailed refused to pay the tax, and at no time prior to this year has an effort been made to collect the same, plaintiff having based its refusal to pay on its constitutional rights. But at the instance of the commissioners of the district the sheriff and ex-officio tax collector of Iberia Parish has demanded the tax on the island and its salt mine and is about to advertise the property as delinquent for the period of four years, aggregating $2,000 with the addition of the penalties provided by law.

The inclusion of the island within the district is charged to be an unconstitutional usurpation of authority and an effort to take plaintiff's property without due process of law. A like charge is made as to the assessment of the tax and its collection.

There is no doubt that a Federal right was asserted. Indeed, plaintiff was at pains, it says, "not to invoke for its protection any provision of the Constitution and laws of the State of Louisiana; not to make any attack upon any law of the State of Louisiana or of any of its subdivisions." And, further, the pleadings "were deliber-

ately cast in this form so as to exclude every question of local or state law and to compel the consideration and decision of the Federal question only."

But notwithstanding the studied effort so made and declared, defendants contend that plaintiff missed its purpose and that a Federal question was neither presented to the courts below nor decided by them, and a motion is made to dismiss. It is said that "under the law of Louisiana the action of the Legislative body (the Police Jury), in the exercise of its discretion as to what property shall be included in a Drainage District, will not be inquired into by the Court, except upon a special averment of fraud which is not pleaded." And such decision, it is further contended, was a decision upon the state law and presents no Federal question, the statute of the State not being attacked.

We cannot concur in the contention. It is true the law of the State as written is not attacked, but the law as administered and justified by the Supreme Court of the State is attacked and it is asserted to be a violation of the Constitution of the United States. The question presented is Federal and the motion to dismiss is denied. And the considerations that move a denial of the motion move a decision of the merits of the question.

The charge is that plaintiff's property was included in the district not in the exercise of "legal legislative discretion," not that the scheme of drainage would inure to the benefit of the property, even indirectly, but with the predetermined "purpose of deriving revenues to the end of granting a special benefit to the other lands subject to be improved by drainage, without any benefit" to plaintiff "or its property whatever," present or prospective.

Nothing could be more arbitrary if drainage alone be regarded. But there may be other purposes, defendants say, and, besides, that the benefit to the property need not be direct or immediate; it may be indirect, such as might

accrue by reason of the general benefits derived by the surrounding territory. But such benefit is excluded by the averments, and it certainly cannot be said that the elevated land of Weeks Island could be a receptacle for stagnant water or would be otherwise a menace to health if not included within the district or would defeat the purpose of the law, which seems to have been the ground of decision in *George* v. *Sheriff*, 45 La. An. 1232.

The case, therefore, is within the limitation of the power of the State as laid down in *Houck* v. *Little River Drainage District, ante,* p. 254, which cites *Norwood* v. *Baker,* 172 U. S. 269, and retains its principle. It has not the features which determined *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 324, and the cases which have followed that case, and *Wagner* v. *Baltimore, ante,* p. 207, decided coincidently with *Houck* v. *Drainage District,* and cited in the latter.

It is to be remembered that a drainage district has the special purpose of the improvement of particular property and when it is so formed to include property which is not and cannot be benefited directly or indirectly, including it only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation. *Wagner* v. *Baltimore, ante,* p. 207. We are not dealing with motives alone but as well with their resultant action; we are not dealing with disputable grounds of discretion or disputable degrees of benefit, but with an exercise of power determined by considerations not of the improvement of plaintiff's property but solely of the improvement of the property of others—power, therefore, arbitrarily exerted, imposing a burden without a compensating advantage of any kind.

*Therefore, the judgment of the Supreme Court of Louisiana is reversed and the case remanded for further proceedings not inconsistent with this opinion.*

*So ordered.*