## YALE HIGHWAY DIST. et al. v. OREGON SHORT LINE R. CO.

(Circuit Court of Appeals, Ninth Circuit. November 9, 1925.)

No. 4617.

Highways ☞90—Bond issue to build road in sparsely inhabited country, almost entire cost of which would he assessed on railroad property, will be enjoined as confiscatory.

Issuance of highway district bonds to construct a highway, to become part of national highway, will be enjoined as confiscatory at instance of railroad company, where it appeared such road would serve no substantial local need, that district was sparsely inhabited, containing little cultivated land, that no state or federal aid, under Federal Highway Act (Comp. St. Supp. 1925, § 7477¼ et seq.), had been made available for the construction thereof, and that railroad whose property comprised most of taxable property of district would have to pay almost entire cost of building such road.

.Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit by the Oregon Short Line Railroad Company against the Yale Highway District, a municipal corporation of the state of Idaho, and others. Decree for complainant, and defendants appeal. Affirmed.

W. G. Bissell and Branch Bird, both of Gooding, Idaho, for appellants.

George H. Smith, of Salt Lake City, Utah, and H.. B. Thompson and J. H. McEvers, both of Pocatello, Idaho, for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. The Yale Highway District, organized under the highway laws of the state of Idaho, is 15 miles long and from 1½ to 6 miles wide, taking in about 15 miles of the right of way of the appellee railroad company. In November, 1923, at an election held in the district, a bond issue of $75,000 was voted to construct and maintain highways. In order to pay interest on the bonds and to create a sinking fund, an annual ad valorem tax on all taxable property in the district is in contemplation. The railroad company sued to enjoin the appellant authorities from negotiating or selling the bonds so authorized, and the District Court, on the authority of Oregon Short Line Railroad Co. v. Kimama Highway District, 287 F. 734, affirmed in 298 F. 431, entered decree in favor of the railroad company. Defendants appealed.

It appears that the bond issue was voted by 10 persons possessing property within the district, with an assessed value of $5,076, out of the total assessed value within the district of $1,048,633, of which assessed value the property of the railroad company was $1,007,305. The complaint alleged that 96.06 per cent. of the principal amount of the bonds and interest charges would fall upon the railroad company, and that the election had been carried by a vote of persons owning

less than one-half of 1 per cent. of the total value of all the property within the district; that the purpose of the bond issue was to construct a highway substantially parallel with the right of way of the railroad company, and to make a link of a through highway to be built in co-operation and conjunction with the state of Idaho and the United States; that the taxation required would be so grossly in excess of any benefits which would result to the property of the railroad company in the district by the construction of the highway as to make the taxes illegal and in violation of the Constitution of the state of Idaho and the Fourteenth Amendment to the Constitution of the United States.

The answer alleged that the bonds were voted for the purpose of joining with the state of Idaho and the United States in constructing a through highway substantially parallel with the railroad company's right of way and in close proximity thereto for the invitation of an extensive travel of pleasure seekers and tourists and automobiles transporting persons in competition with the complainant's line of railroad; admitted that the railroad travels through practically a desert country, and that none of the lands in the highway district are irrigated, but averred that the bonds were voted in furtherance of the public policy of the United States and of the state of Idaho to construct a through traffic line highway for the use of the United States and the state of Idaho and others, for purposes of through traffic and transportation, for use in time of war and for carrying material and for intercommunication generally in time of peace, and that before voting the bonds the highway district had made an agreement with the state of Idaho and the United States, whereby the United States would pay 50 per cent. of the cost of construction of the road and the state of Idaho would pay 33¹/₃ per cent. of such cost.

It was proven on the trial that there are very few people within the district, one school and only 8 or 9 pupils, and less than 12 cultivated farms. There is a siding at Hawley, within the district, where carload lots of grain can be unloaded, and from the siding to the west boundary of the district there is a graded gravel road suitable for automobile travel. In 1923 a little over three tons of grain were produced, and in 1924 but a little over one ton. Agricultural production within the district is insignificant, and population is less than it was several years ago.

Appellants' contentions that the railroad company would be liable for not over 25 per cent. of the cost of construction of the highway, estimated at $176,000, as the other taxable property in the district would, through taxation, have to bear its proportionate interest upon the bonds, and that approximately 8,000 to 9,000 acres of land within the district will be susceptible of irrigation from the American Falls reservoir now under construction, rest largely upon conjecture, as the clear evidence is that neither federal nor state aid has been made available for the construction of the proposed highway, nor have the waters of the reservoir spoken of become available for lands within the district.

The Federal Highway Act (42 Stat. 212 [Comp. St. Supp. 1925, § 7477¼ et seq.]) and regulations of the Department of Agriculture provide that a statement must be certified by the state highway authorities to the Secretary of Agriculture, showing what funds will be available for local co-operation, before consideration for federal aid may be given to a project. When the Secretary of Agriculture gives his approval, the proposed road becomes one to which, when the state authorities approve, federal moneys may be appropriated.

But, with respect to the road here involved, the director of highways of the state of Idaho testified that it was felt by the state authorities that there could be no state funds made available for the project, and that no steps had been taken to obtain funds from the federal government for "that particular stretch of road"; that at the time of the trial the only revenues which the state highway department had were those provided by gasoline taxes and 25 per cent. of the motor vehicle licenses, and that the fund was so low that the authorities were very loath to spend any sums upon construction work. It is thus apparent that upon the facts appellants' position is no better than was that of appellants in the Kimama Case, and that, if the bonds are issued and sold, it will result in placing the burden upon the property of the railroad company of substantially the whole tax.

It is unnecessary to state the legal principles applicable. They were discussed and applied in the Kimama Case, and upon what we then said we affirm the decree herein.

Affirmed.